UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                     Case # 16-CR-34-FPG

v.                                   DECISION AND ORDER

DAVID MITCHELL,

                              Defendant.

## INTRODUCTION

On January 25, 2021, Defendant David Mitchell, an inmate incarcerated at Allenwood Medium FCI, filed a Motion for Compassionate Release due to the COVID-19 pandemic. ECF No. 34. The Government opposes the motion. ECF No. 36. The Probation Department also filed a response. ECF No. 38. Defendant filed supplements to his motion and a reply. ECF Nos. 41, 43, 44. For the reasons that follow, Defendant's motion is DENIED.

## BACKGROUND

On June 7, 2018, Defendant pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. ECF No. 23. Considering Defendant's base offense level, acceptance of responsibility, and criminal history, his sentencing range was imprisonment for 121 to 151 months. *Id.* at 5. On August 9, 2018, the Court sentenced Defendant to a term of 121 months' imprisonment followed by five years of supervised release. ECF No. 32 at 2-3. Defendant's scheduled release date is February 5, 2027. ECF No. 38 at 1.

## LEGAL STANDARD

Defendant seeks release under the First Step Act's "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A). This statute provides an exception to the general rule that a court may not modify a term of imprisonment once it has been imposed. *United States v. Mack*, No. 17-CR-

138(KAM), 2020 U.S. Dist. LEXIS 195815, at *5 (E.D.N.Y. Oct. 21, 2020).   Under 18 U.S.C. § 3582(c)(1)(A), a district court may reduce defendant's term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant a reduction.   18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Rojas*, No. 01 CR 471 (CM), 2020 U.S. Dist. LEXIS 196663, at *4 (S.D.N.Y. Oct. 21, 2020).

Because courts consider the § 3553 factors when sentencing defendants, when presented with a motion for compassionate release, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (discussing legislative history of provision); *see United States v. Roney*, No. 20-1834, 2020 U.S. App. LEXIS 34890, at *7 (2d Cir. Nov. 2, 2020) (summary order) (quoting *Ebbers* for the proposition that "a compassionate-release motion 'is not an opportunity to second guess or to reconsider' the sentencing court's original decision").   In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431.

Additionally, a defendant who wishes to move a district court for compassionate release must first apply to the Bureau of Prisons ("BOP") for release.   A prisoner may only file a motion for compassionate release in the district court if either (1) he  has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" (the "exhaustion requirement"); or (2) thirty days have elapsed since the warden of the prisoner's facility received such a request (the "thirty-day backstop").  18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

### I.      Exhaustion

Defendant requested compassionate release from his prison warden and was denied.  ECF No. 34 at 5.  The Government does not argue that Defendant has failed to exhaust his administrative remedies.  ECF No. 36 at 2.  The Court therefore proceeds to the merits of Defendant's motion.

### II.     Whether Extraordinary and Compelling Reasons Exist

Defendant argues that his underlying health conditions, coupled with his incarceration, put him at an increased risk of contracting and sustaining life-threatening complications due to COVID-19.  He also argues that his family circumstances and rehabilitation warrant release.

Regarding his medical conditions, Defendant asserts that, in 2014, he underwent a kidney transplant—donated from his wife—and is on several medications to maintain this "new kidney." ECF No. 34 at 1.  "[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *6 (D. Conn. Apr. 30, 2020).  Courts "base[] their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant ha[s] an underlying medical condition that place[s] her or him at risk of developing a severe case of the illness." *United States v. Lagan*, No. 1:18-CR-0283 (LEK), 2020 U.S. Dist. LEXIS 86330, at *8 (N.D.N.Y. May 11, 2020).  "In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual at higher risk for severe illness." *Id.* (citation and internal quotation marks omitted).

However, "COVID-19 does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Weiskopf*, No. 19-CR-

6093-FPG, 2020 U.S. Dist. LEXIS 125460, at *8 (W.D.N.Y. May 14, 2020) (citation and internal quotation marks omitted).  It is the prisoner's burden to show that he is entitled to release.  *United States v. Flores*, No. 17 Cr. 449-17 (KPF), 2020 U.S. Dist. LEXIS 98334, at *10 (S.D.N.Y. June 3, 2020) (citation omitted).  To satisfy this burden, the prisoner need not "establish his increased risk with mathematical precision," but he should at least "provide a reasonable estimate of the risk he faces." *Weiskopf*, 2020 U.S. Dist. LEXIS 125460, at *9.

Here, the CDC has identified Defendant's condition—an immunocompromised state from a solid organ transplant—as a condition that does increase one's likelihood of experiencing complications from infection with COVID-19.  *See* People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 15, 2021).  The Government concedes that this condition presents extraordinary and compelling circumstances.  ECF No. 36 at 18.  The Probation Department, however, opposes release, noting that Defendant's medical records reflect that his kidney ailment remains stable, and that Defendant has been vaccinated.  ECF No. 38 at 3.  Additionally, Defendant is only 39 years old, so he does not fall into the category of individuals facing a significantly increased risk of complications or death due to their age.  *See* Older Adults, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Mar. 15, 2021).

As for his incarceration, the Court is "mindful of the fact that conditions of confinement— sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere." *United States v. Murph*, No. 08-CR-322 (JMA), 2020 U.S. Dist. LEXIS 105100, at *7 (E.D.N.Y. June 16, 2020).  However, while the conditions at Allenwood Medium—as with any prison—are not ideal, they are not currently as dire as at other

institutions.  As of March 12, 2021, there is only one positive inmate and no positive staff members.

*See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last

visited Mar. 15, 2021).   There have been no deaths, and 548 prisoners and 49 staff members have

recovered.  *Id.*  "While the Court acknowledges the difficulties in controlling the spread of this virus

in a prison setting, the virus exists both inside and outside the prison walls.  If released, Defendant

would still be facing a risk of COVID-19."  *United States v. Rivera*, No. 6:16-CR-06024 EAW,

2020 U.S. Dist. LEXIS 229832, at *5-6 (W.D.N.Y. Dec. 1, 2020); *see also United States v. Day*,

473 F. Supp. 3d 209 (W.D.N.Y. 2020) ("[B]eing incarcerated . . . in a facility that has inmates and

staff members with the disease, does not on its own constitute extraordinary and compelling

circumstances justifying a reduction in a sentence—especially because the virus exists both inside

and outside the prison walls.").

Defendant also raises his rehabilitation and the need to support his family as reasons for

release.  He asserts that he has taken as many programs and made as many efforts as possible to

ensure that he can break the cycle of crime in which he was previously involved.  He also explains

that his absence has been difficult on his wife and children, and he wants to be able to support them

and set an example for them.

To be sure, Defendant has proffered some heartening submissions on this front.  He filed

over a dozen letters from family, friends, and fellow inmates attesting to his good character,

explaining their need for his support, and offering their encouragement.  ECF No. 41 at 6-23, 39.

He filed several certificates from rehabilitation programs he completed.  *Id.* at 25-38.  He even

created his own stock market and business class in prison when regular programming was cancelled

due to the pandemic.  *Id.* at 3.  The Court commends these efforts.

While rehabilitation alone cannot constitute an extraordinary and compelling reason

justifying a sentence reduction, it may be considered, in combination with other factors.  *United*

*States v. Castillo*, No. 03-CR-979 (KMW), 2021 U.S. Dist. LEXIS 15469, at *11 (S.D.N.Y. Jan. 27, 2021) (internal citations omitted).   As to family circumstances, "§ 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated." *United States v. John*, No. 15 CR 208 (CM), 2020 U.S. Dist. LEXIS 210355, at *7 (S.D.N.Y. Nov. 9, 2020) (noting that "being separated from [spouses] and children and unavailable to care for aging parents are but two of the sad and inevitable consequences of incarceration"); *see also United States v. Rodriguez*, No. 18-CR-49-RJA, 2020 U.S. Dist. LEXIS 224977, at *11 (W.D.N.Y. Dec. 1, 2020) ("Defendant's family circumstances do not warrant a finding of extraordinary and compelling circumstances here.   The impact of the COVID-19 pandemic on Defendant and her family is, unfortunately, not unique.   There are surely many inmates who also face such difficulties.").

Considering together Defendant's medical conditions, his incarceration, his rehabilitation, and his family circumstances, Defendant has arguably—though not definitively—demonstrated extraordinary and compelling circumstances.   His kidney condition supports a finding of extraordinary and compelling circumstances.   His rehabilitative efforts and family circumstances certainly do not weigh against release, but they do not strongly favor it.   *See United States v. Camisa*, No. 16-cr-522 (RJS), 2021 U.S. Dist. LEXIS 25530, at *5 (S.D.N.Y. Feb. 9, 2021) ("Although [defendant] insists that the combination of rehabilitation and the prevalence of COVID-19 amount to an extraordinary and compelling reason for release, the Court cannot conclude that every inmate with a generally favorable prison record automatically has an 'extraordinary' reason for early release when the BOP facility in which he resides experiences an uptick of COVID-19 cases.").   Finally, Defendant's vaccination and the current conditions at Allenwood Medium weigh against a finding of extraordinary and compelling circumstances warranting release.   The Court need not conclusively

decide this issue, however, because even if Defendant established extraordinary and compelling circumstances, the § 3553(a) factors weigh against release.

### III.   Whether Compassionate Release Would Undermine the Goals of the Original Sentence

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines];
> (5) any pertinent [Sentencing Commission policy statement];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court weighed these factors when it imposed Defendant's original 121-month term of imprisonment.  The Court acknowledged that Defendant was raised in an environment that may have conditioned him to assume a lifestyle of committing crimes, but believed that Defendant would be able to break this cycle, and that he was sincere in his responses to the Court.  ECF No. 33 at 4. The Court recognized that 121 months was a significant period of time, but indicated that Defendant would still be relatively young upon release and would have an opportunity to become a positive support for his family at that time.  *Id.*  Defendant's submissions to the Court in connection with the instant motion for compassionate release suggest that he is indeed on the path to breaking the cycle

of crime and becoming a support for his family, but they do not raise issues that the Court had not already considered.

For all the reasons considered at sentencing, Defendant's original sentence was and remains appropriate, notwithstanding the pandemic. Defendant was sentenced on August 9, 2018. To date, therefore, he has served approximately 31 months—about 26 percent—of his 121 month sentence. Reducing Defendant's sentence—which was already at the lowest end of the guidelines range—by approximately 74 percent would not substantially satisfy the purposes of his original sentence, as it would fail to "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). While "[a] just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease," *United States v. Vence-Small*, No. 3:18-cr-00031 (JAM), 2020 U.S. Dist. LEXIS 80576, at *11 (D. Conn. May 7, 2020), neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Accordingly, the Court finds that Defendant has not met his burden of showing that release is warranted.

## CONCLUSION

For all the reasons stated above, Defendant's motion for compassionate release, ECF No. 34, is DENIED.

IT IS SO ORDERED.

Dated: March 15, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court