UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                        Case # 16-CR-0034-FPG

v.                                                 DECISION AND ORDER

DAVID MITCHELL,

                                      Defendant.

## INTRODUCTION

On January 25, 2021, Defendant David Mitchell, an inmate incarcerated at Federal Correctional Institution Allenwood Medium ("Allenwood"), filed a motion for compassionate release. ECF No. 34. On March 15, 2021, the Court denied defendant's motion on the grounds that while Defendant's medical conditions, incarceration, rehabilitation, and family circumstances arguably demonstrated extraordinary and compelling circumstances, the Section 3553(a) factors weighed against release. ECF No. 45.

On April 2, 2021, Defendant filed a Motion for Reconsideration, ECF No. 48, which the Court denied on the grounds that Defendant had not provided any reason for which the Court should reconsider its prior analysis of the applicable sentencing factors. ECF No. 49. Defendant filed a second Motion for Reconsideration on September 21, 2021. ECF No. 57. In that motion, Defendant asserts that his intended release date is February 10, 2024, which would alter the percentage of time served—a factor the Court considers when weighing the Section 3553(a) factors. As a result, the Court directed the Government and Probation to respond. ECF No. 59.

For the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

On June 7, 2018, Defendant pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846.   ECF No. 23.   Considering Defendant's base offense level, acceptance of responsibility, and criminal history, his sentencing range was imprisonment for 121 to 151 months.  *Id.* at 5.  On August 9, 2018, the Court sentenced Defendant to a term of 121 months' imprisonment followed by five years of supervised release. ECF No. 32 at 2-3.  Defendant's scheduled release date is February 5, 2027, however, in the event Defendant is credited with all of his good conduct time, his release date will be August 10, 2025. ECF No. 66 at 1.[1]

## DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Lucas*, No. 15-CR-143, 2020 U.S. Dist. LEXIS 75428, at *3 (W.D.N.Y. Apr. 29, 2020) (citation, internal quotation marks, and brackets omitted).  One such statute is 18 U.S.C. § 3582(c)(1)(A), which provides an exception "often referred to as 'compassionate release.'"  *Id.*   Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if a defendant can show that (1) he has met the statutory exhaustion requirement; (2) "extraordinary and compelling reasons" warrant a reduction; (3) he is not a danger to the community; and (4) a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).  *Id.* at *3-4; *see also* U.S.S.G. § 1B1.13 (the United States Sentencing Guidelines Policy Statement on compassionate release).

---

[1] While Defendant asserted in his motion that his release date will be adjusted to February 10, 2024 if he satisfies the RDAP program, Probation spoke with Allenwood's Supervisory Attorney and she informed Probation that Defendant is not eligible for the RDAP program because he is serving a five-year concurrent sentence in connection to a 2017 drug conviction in Arizona.  ECF No. 66 at 1-2.  Therefore, the projected release date remains accurate.

In its prior Decision and Order denying Defendant's motion for compassionate release, the Court found that Defendant's health condition, specifically, his immunocompromised state from solid organ transplant indeed increased his likelihood of experiencing complications from infection with COVID-19. ECF No. 45 at 4. The Court was also mindful of the difficulties in controlling the spread of the virus in a prison setting. *Id.* at 5. Further, the Court commended Defendant's efforts in his rehabilitation. *Id.* While the Court noted that such factors arguably demonstrated extraordinary and compelling circumstances, the Court went on to conclude that the Section 3553(a) factors weighed against release. *Id.* at 6-7.

Now, in his motion for reconsideration, Defendant again presents information regarding his health conditions and risk of severe illness due to COVID-19 and argues that his release date is earlier than the date which this Court previously considered. ECF No. 57.

## I.    Legal Standard

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Common grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). The decision to grant a motion for reconsideration is within "the sound discretion of the district court. . . ." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

II.      **Extraordinary and Compelling Circumstances**

In support of his motion for reconsideration, Defendant asserts that although he is fully vaccinated—including receiving the third, "booster" shot—his kidney transplant causes him to remain more susceptible to severe complications from COVID-19.  ECF No. 57 at 3.  Indeed, on October 25, 2021, the Court received a letter from Kerry Clark, the Law Clerk at Allenwood, who advised that Defendant tested positive for COVID-19.  ECF No. 62 at 1.  On November 8, 2021, the Court received Defendant's "Objection to Government's Response to Motion for Reconsideration" wherein he confirmed that despite his full vaccination status, he contracted COVID-19.  ECF No. 65 at 1.  He further alleges that he has not been provided with the recommended treatment for those who have had organ transplants and contract COVID-19.  *Id.* at 2.

"[A] defendant's pre-existing health conditions . . . in combination with the increased risks of COVID-19 in prisons" may, in some cases, "constitute 'extraordinary and compelling reasons' warranting relief."  *United States v. Delgado*, No. 3:18-CR-17-(VAB)-1, 2020 U.S. Dist. LEXIS 84469, at *6 (D. Conn. Apr. 30, 2020).  Courts "base[] their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant ha[s] an underlying medical condition that place[s] her or him at risk of developing a severe case of the illness."  *United States v. Lagan*, No. 1:18-CR-0283 (LEK), 2020 U.S. Dist. LEXIS 86330, at *8 (N.D.N.Y. May 11, 2020).  "In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual at higher risk for severe illness."  *Id.* (citation and internal quotation marks omitted).

As this Court previously found, Defendant's health condition demonstrates extraordinary and compelling circumstances.  However, Defendant's recent COVID-19 diagnosis weighs against

his release as he does not allege that he has suffered from severe symptoms or has any lingering or severe complications from the virus despite asserting that he has not received the recommended treatment.  *See United States v. Giddens*, No. 19-cr-47, 2021 WL 485697, at *2 (W.D.N.Y. Feb. 10, 2021) ("The fact that Defendant has . . . contracted the virus weighs against release because Defendant does not indicate that he has suffered any complications . . . from contracting the virus.").

As for his incarceration, the Court remains "mindful of the fact that conditions of confinement—sharing small cells, eating together, using same bathrooms and sinks, delays in medical evaluation and treatment, and rationed access to soap—make prisons more potentially conducive to the transmission of COVID-19 than elsewhere." *United States v. Murph*, No. 08-CR-322 (JMA), 2020 U.S. Dist. LEXIS 105100, at *7 (E.D.N.Y. June 16, 2020).  Defendant asserts that he is "at a greater risk of dying now with multiple cases spiking in Allenwood Complex," including 23 cases at Allenwood Low and two cases at Allenwood Medium.  ECF No. 65 at 2.  However, while the conditions at Allenwood—as with any prison—are not ideal, recent data from the BOP does not suggest that the Allenwood Complex is facing an outbreak of COVID-19, let alone an uncontrolled one.  Indeed, as of November 9, 2021, Allenwood Low has two inmates and one staff member who have tested positive for COVID-19 and Allenwood Medium has only one inmate and no staff members who have tested positive for COVID-19.  *See COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited Nov. 9, 2021).  "While the Court acknowledges the difficulties in controlling the spread of this virus in a prison setting, the virus exists both inside and outside the prison walls.  If released, Defendant would still be facing a risk of COVID-19." *United States v. Rivera*, No. 6:16-CR-06024 EAW, 2020 U.S. Dist. LEXIS 229832, at *5-6 (W.D.N.Y. Dec. 1, 2020); *see also United States v.*

*Day*, 473 F. Supp. 3d 209 (W.D.N.Y. 2020) ("[B]eing incarcerated . . . in a facility that has inmates and staff members with the disease, does not on its own constitute extraordinary and compelling circumstances justifying a reduction in a sentence—especially because the virus exists both inside and outside the prison walls.").

The Court again commends Defendant for his efforts in rehabilitation.  He indicates that he has completed an additional six programs since this Court issued its Decision and Order on Defendant's motion for compassionate release.  ECF No. 57 at 3.  Thus, Defendant asserts a total of 46 programs have been completed and he is currently enrolled in three more, including an electrical program.  *Id.*  It is clear Defendant is working to break the cycle of crime in which he was previously involved.  While rehabilitation alone cannot constitute an extraordinary and compelling reason justifying a sentence reduction, it may be considered, in combination with other factors.  *United States v. Castillo*, No. 03-CR-979 (KMW), 2021 U.S. Dist. LEXIS 15469, at *11 (S.D.N.Y. Jan. 27, 2021) (internal citations omitted).

Finally, the Court notes that it received a letter from Defendant's wife, Dominique, who indicated her concern for Defendant's health, discussed the family's need for his assistance at home, and recognized Defendant's prior wrongdoing.  ECF No. 60.  The Court is sympathetic to Defendant and his family, but "§ 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated."  *United States v. John*, No. 15 CR 208 (CM), 2020 U.S. Dist. LEXIS 210355, at *7 (S.D.N.Y. Nov. 9, 2020) (noting that "being separated from [spouses] and children and unavailable to care for aging parents are but two of the sad and inevitable consequences of incarceration"); *see also United States v. Rodriguez*, No. 18-CR-49-RJA, 2020 U.S. Dist. LEXIS 224977, at *11 (W.D.N.Y. Dec. 1, 2020) ("Defendant's

family circumstances do not warrant a finding of extraordinary and compelling circumstances here. The impact of the COVID-19 pandemic on Defendant and her family is, unfortunately, not unique. There are surely many inmates who also face such difficulties.").

Again, the Court finds that Defendant's health, incarceration, rehabilitation, and family circumstances, when considered together, arguably demonstrated extraordinary and compelling circumstances.

## III.    Section 3553(a) Factors

However, as previously decided, Defendant's original sentence was and remains appropriate, notwithstanding the pandemic, under the Section 3553(a) Factors.  Under § 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines];
> (5) any pertinent [Sentencing Commission policy statement];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 U.S. Dist. LEXIS 64418, at *7 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

The Court weighed these factors when it imposed Defendant's original 121-month term of imprisonment and again when it issued the Decision and Order on Defendant's motion for

compassionate release.  ECF No. 45 at 7-8.  The Court acknowledged that Defendant was raised in an environment that may have conditioned him to assume a lifestyle of committing crimes but believed that Defendant would be able to break this cycle, and that he was sincere in his responses to the Court.  ECF No. 33 at 4.  The Court recognized that 121 months was a significant period of time but indicated that Defendant would still be relatively young upon release and would have an opportunity to become a positive support for his family at that time.  *Id.*

In his motion for reconsideration, Defendant argued that his intended release date was incorrect, and therefore, he has served more time than was considered previously.  *See* ECF No. 57 at 2-3.  However, Probation and the Government maintain that Defendant's projected release date remains the same as he is not eligible for the RDAP program.  *See* ECF No. 61 at 3; ECF No. 66 at 1.  Defendant was sentenced on August 9, 2018.  To date, therefore, he has served approximately 39 months[2]—about 32 percent—of his 121 month sentence.  Reducing Defendant's sentence—which was already at the low end of the guidelines range—by almost 70 percent would not substantially satisfy the purpose of his original sentence, as it would fail to "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Defendant's motion for reconsideration does not provide any new evidence, change of law, or need to correct clear error.[3]

## IV.    Home Confinement

In his motion for reconsideration, Defendant requests that the Court consider releasing him to home confinement until the pandemic is over.  Although Defendant does not expressly invoke

---

[2] This does not take into consideration credit for time served prior to sentencing, to the extent Defendant will be credited with such time.

[3] Defendant requests that the Court provides a letter of recommendation regarding his pending clemency application. The Court declines to exercise its discretion in doing so at this time.

the CARES Act, he seeks home confinement based on the risks posed by the COVID-19 pandemic. In response to COVID-19, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), which expanded the authority of the Bureau of Prisons ("BOP") to transfer inmates to home confinement under certain conditions. *Id.* at § 12003(b)(2), 134 Stat. at 516; *see also United States v. Ogarro*, No. 18-CR-373, 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020) (discussing BOP's authority to place inmates in home confinement under the CARES Act). Therefore, the Court considers Defendant's request pursuant to the CARES Act.

The power to grant home confinement, however, is vested "exclusively within the discretion of the BOP." *Ogarro*, 2020 WL 1876300, at *6; *United States v. Brady*, No. 18-CR-316, 2020 WL 2512100, at *2 n.2 (S.D.N.Y. May 15, 2020) ("[T]he CARES Act vest[s] the needed authority in the BOP to place Brady in home confinement until the threat of COVID-10 abates."). The Court therefore lacks the authority to grant Defendant home confinement.

## CONCLUSION

For the reasons discussed, Defendant's motion for reconsideration, ECF No. 57, is DENIED.

IT IS SO ORDERED.

Dated: November 15, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York