UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                                          Case # 16-CR-34-FPG

                                                                                             DECISION AND ORDER

DAVID MITCHELL,

                                   Defendant.
_____

## INTRODUCTION

Defendant David Mitchell has moved for compassionate release and for reconsideration of the Court's prior orders denying compassionate release. ECF Nos. 70, 74. The government opposes the motion. ECF No. 78. For the reasons set forth below, Defendant's motion is DENIED.

## BACKGROUND

On June 7, 2018, Defendant pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. ECF No. 23. Considering Defendant's base offense level, acceptance of responsibility, and criminal history, his sentencing range was imprisonment for 121 to 151 months. *Id.* at 5. On August 9, 2018, the Court sentenced Defendant to a term of 121 months' imprisonment followed by five years of supervised release. ECF No. 32 at 2-3. Defendant's scheduled release date is February 5, 2027, however, in the event Defendant is credited with all of his good conduct time, his release date will be August 10, 2025. ECF No. 66 at 1; ECF No. 78 at 1.

In March 2021, the Court denied Defendant's first motion for compassionate release, concluding that, while Defendant had "arguably . . . demonstrated extraordinary and compelling circumstances" in light of the COVID-19 pandemic, his rehabilitation, and his need to support his

1

family, the § 3553(a) factors did not weigh in favor of release. ECF No. 45 at 6-8. In April 2021, the Court denied Defendant's motion for reconsideration, again concluding that the sentencing factors did not warrant release. *See* ECF No. 49. In November 2021, the Court denied another motion for reconsideration, which was premised in part on Defendant's belief that he had an earlier release date than the Court had previously determined.[1] *See* ECF No. 67 at 1. The Court reaffirmed that Defendant "arguably demonstrated extraordinary and compelling circumstances" but that the sentencing factors militated against release. *Id.* at 7-8.

On February 2, 2022, Defendant filed another motion for reconsideration. He alleged that his facility was suffering from another outbreak of COVID-19, and that, due to his prior COVID-19 infection, his medical conditions had worsened to such a degree that the facility's medical staff, including one "Dr. Cullin," were "very concern[ed] about [his] well being and health issue[s] while incarcerated." ECF No. 70 at 1. He believes he will die from kidney failure or irreparably damage his kidneys if he is infected with COVID-19 again.

In addition, Defendant disclosed that his fifteen-year old son had been shot in January 2022, which left him paralyzed from the waist down. *Id.* at 2; *see also* ECF No. 77 at 4; ECF No. 81 at 8. Medical records confirm his son's medical conditions. *See* ECF Nos. 77, 81. Defendant argues that this is a sufficient basis for release because neither his son's mother—Jenita Cook—nor Defendant's wife—Dominique Raspberry-Mitchell—are able to care for the son's needs by themselves. *See* ECF No. 70 at 2; ECF No. 76 at 1; ECF No. 80 at 1.

---

[1] In his present motion, Defendant continues to argue that he may be able to receive additional time off of his sentence if certain prerequisites occur. *See* ECF No. 70 at 3-4; ECF No. 85 at 1-2. The Court agrees with Probation's observation that it would be inappropriate to calculate Defendant's remaining term of imprisonment on the assumption that he will receive certain credits or complete certain programs. *See* ECF No. 79 at 3. Rather, if Defendant does receive certain credits in the future, such changes in circumstance may form the basis of a future motion.

2

In a follow-up letter on February 16, 2022, Defendant notified the Court that he tested positive for COVID-19 again. ECF No. 73 at 1.

On February 22, 2022, Defendant filed an "emergency" motion for compassionate release. He reiterates that release is warranted because Ms. Cook is unable to care for his son: she is "traumatize[d]" and will experience "sever[e] hardship" in connection with caring for the son. ECF No. 74 at 2-3. Defendant also asserted that he is "very sick" from COVID-19, and claimed he was "slowly" dying. *Id.* at 4.

The Court has received letters from Ms. Cook and Ms. Mitchell, along with medical records of David Mitchell and his son. *See* ECF Nos. 76, 77, 80, 81. The Court will discuss Ms. Cook's letter below. Ms. Mitchell writes that she takes care of Defendant's mother, as well as their four children. ECF No. 60 at 1. She states that Defendant's release would "take a great load off of" her and Ms. Cook given their childcare responsibilities. ECF No. 80 at 1.

On March 11, 2022, the Court received a memorandum from Probation. ECF No. 79. A probation officer spoke with Dr. Thomas Cullen, a doctor at Defendant's facility, who undermined Defendant's claims regarding his personal health circumstances. Dr. Cullen stated that Defendant's claim that he was "very sick and slowly dying" was "simply untrue." *Id.* at 1. Defendant was asymptomatic during his most recent bout with COVID-19, and his kidney condition is stable. *Id.* at 1-2. Dr. Cullen disputed the claim that Defendant's incarceration put him at serious risk of death; to the contrary, he believed Defendant was receiving better care at the facility because he was closely monitored. *Id.* at 2. Dr. Cullen reported that Defendant's facility had reported no deaths since the beginning of the pandemic and that it does a "great job" isolating infected inmates. *Id.*

On March 28, 2022, Defendant filed his reply brief. ECF No. 82. He appears to concede Dr. Cullen's statements, writing that "when he used the terms 'very sick' and 'dyeing slowly' [sic] he was referring to his concerns of [] getting re-infected" repeatedly with COVID-19. *Id.* at 1. But Defendant does dispute that Dr. Cullen's claim that his kidney condition stabilized after his first COVID-19 infection. *Id.* at 2. Still, Defendant admits that he "is not in a critical health state." *Id.*

Defendant also reiterates that compassionate release is warranted so he can take care of his son. *Id.* at 3. Defendant clarifies that Ms. Cook is not incapacitated or physically unable to care for their son, but that she is under stress and is unable to competently care for her son given that she also cares for her two daughters and Defendant's mother. *See id.* at 3; *see also id.* ("Between work, school and the daily errands she has and the doctor appointments she has [for] everyone in the household . . . she becomes [overwhelmed] and exhausted from every day life task." ECF No. 82 at 3.

This sentiment is echoed in Ms. Cook's letter to the Court. Ms. Cook writes that she now has to leave work to care for her son; that her son cannot be left alone because of the risk of pressure sores developing; and that their home is not wheelchair accessible, which requires her to expend a tremendous amount of energy moving him up and down stairs and transporting him to appointments. ECF No. 76 at 1. She fears that she will need to put her son in an assisted-living home, because she cannot juggle the many responsibilities with being his caretaker while also "raising 2 young girls" and attending school and work. *Id.* Defendant fears that without his presence, his son will fall deeper into his depression and will suffer mentally and physically. ECF No. 82 at 3.

In his reply, Defendant again emphasizes his rehabilitation. *See id.* at 5-6. He describes the difficult conditions at his facility due to the pandemic lockdowns. *Id.* at 6. And he has provided his post-release plans to the Court. *See id.* at 8.

On April 4, 2022, Defendant submitted documentation to show that he is in the process of removing a detainer from Arizona, which, if lifted, may render him eligible for the Residential Drug and Alcohol Program.[2] *See* ECF No. 85; *see also* ECF No. 70 at 3-4; ECF No. 79 at 1, 2.

## DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 WL 2059735, at *1 (W.D.N.Y. Apr. 29, 2020) (internal brackets omitted). "Section 3582(c)(1)(A) provides one such statutory exception, often referred to as 'compassionate release.'" *Id.* Under Section 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if, after "considering the factors set forth in section 3553(a)," the court "finds that . . . extraordinary and compelling reasons warrant such a reduction." A district court's "discretion in this area—as in all sentencing matters—is broad," and courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Furthermore, "[t]he defendant has the burden to show he is entitled to a sentence reduction." *United States v. Flores*, No. 17-CR-449, 2020 WL 2907549, at *2 (S.D.N.Y. June 3, 2020).

Having reviewed the briefing, letters, and other materials filed, the Court again concludes that a sentence reduction is not appropriate considering the § 3553(a) factors. *See United States v.*

---

[2] Defendant filed these materials in connection with a "Motion to Supplement" the record. *See* ECF No. 85. His request to add these materials to the record is granted, and the Court has considered them in resolving the present motion.

5

*Giddens*, No. 20-3270, 2021 WL 5267993, at *2 (2d Cir. Nov. 12, 2021) ("[N]othing in section 3582(c) require[s] the district court to draw an express and definitive conclusion [concerning whether extraordinary and compelling reasons exist] before considering whether the section 3553(a) factors [] render[] a sentence reduction unwarranted.").

> Under § 3553(a), a court must consider the following factors when it imposes a sentence:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
> (5) any pertinent [Sentencing Commission policy statement]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)). The Court already weighed these factors when it imposed Defendant's original term of imprisonment. Thus, in the context of the present motion, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, No. 02-CR-114, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (discussing legislative history of provision). In other words, the issue is whether the original § 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at *7.

The Court has already addressed many of the reasons that Defendant identifies to support his request for compassionate release—*e.g.*, the pandemic, his health concerns, the prison conditions, his rehabilitation, and his overall desire to support his family. *See, e.g.*, ECF No. 45 at 3-5. The Court has repeatedly held that Defendant has "arguably" demonstrated extraordinary and compelling reasons given these circumstances, *see id.* at 6; ECF No. 67 at 7, but that those reasons did not warrant a sentence reduction in light of the § 3553(a) factors. *See* ECF No. 45 at 7-8; ECF No. 67 at 7-8. As to these reasons for release, for present purposes it suffices to say that "Defendant's original sentence was and remains appropriate, notwithstanding the pandemic," his rehabilitation, and his desire to support his family. ECF No. 45 at 8. Defendant's most recent arguments do not persuade the Court that, with respect to those reasons, the calculus has changed to such a degree that relief is warranted.[3]

By contrast, the tragic incident involving Defendant's son presents an issue the Court has yet to address. As a general matter, the Court agrees that the incapacitation of a dependent child may constitute an extraordinary and compelling reason for release. Granted, the sentencing guidelines do not identify the incapacitation of a dependent child as an extraordinary and compelling circumstance; they provide that the "incapacitation *of the caregiver* of the defendant's minor child or minor children" rises to that level. *United States v. Alamo*, No. 18-CR-350, 2022 WL 598429, at *2 (E.D.N.Y. Feb. 28, 2022) (emphasis added). Thus, the guidelines focus on whether the caregiver has become "incapable of caring for the child," not on the child's capabilities. *See, e.g.*, *United States v. White*, No. 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021) (quoting BOP's "non-binding Program Statement" on compassionate release requests);

---

[3]In particular, the Court finds unpersuasive Defendant's most recent arguments about his health and medical conditions. Defendant's claim that he is "very sick" and "dying slowly" is not grounded in the opinion of his facility's medical staff—as he initially claimed—but on his own beliefs regarding his conditions. *See* ECF No. 70 at 1; ECF No. 74 at 4. In his reply brief, Defendant concedes that he "is not in a critical health state." ECF No. 82 at 2.

7

*United States v. Tinsley*, No. 18-CR-2634, 2021 WL 325852, at *3 (D.N.M. Feb. 1, 2021) (fact that girlfriend's child was suffering from a bone disorder did not constitute extraordinary and compelling circumstance, where defendant "failed to show that . . . the girlfriend is unable to care for her child"). Furthermore, the use of the term "incapacitation" suggests an extremely high degree of impairment. *See United States v. Muniz*, No. 19-CR-102, 2021 WL 5162566, at *3 (D. Utah Nov. 5, 2021) (fact that defendant's parents had difficulty caring for child with special needs due to the "mother's neck surgeries and [the] father's full-time job" did not "rise to the level of incapacitation"); *United States v. Waugh*, No. 20-CR-8, 2021 WL 2417250, at *2 (M.D. Fla. June 14, 2021) (fact that fiancée was unemployed and "struggling to financially support their two young children" did not suggest that "the children's caregiver is incapacitated" within the meaning of the guidelines).

However, district courts are not bound by the sentencing guidelines' definition of "extraordinary and compelling reasons" and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring." *United States v. Sessa*, No. 92-CR-351, 2022 WL 970778, at *1 (E.D.N.Y. Mar. 31, 2022). As a result, a variety of family circumstances that do not fit within the guidelines' restrictive classification could, in theory, constitute extraordinary and compelling reasons for release. But while they may have more leeway to make such findings, district courts have nonetheless held that even highly challenging circumstances resulting from a defendant's absence and his child's special needs is not enough. *See, e.g.*, *United States v. Yancey*, No. 12-CR-777, 2021 WL 2156484, at *1 (N.D. Cal. May 27, 2021) (release not warranted where defendant's daughter passed away, leaving four children including one with severe asthma, despite the fact that daughter's mother was "overwhelmed by the need to take care of all the children" while maintaining "full-time employment"); *United States*

8

*v. Myrick*, No. 12-CR-385, 2020 WL 6128943, at *5 (E.D.N.Y. Oct. 19, 2020) (release not warranted where maternal grandmother was facing hardship in caring for defendant's special-needs children, including personal stress and difficulties in "juggling [her work schedule with] the services and appointments related to [the childrens'] special needs"). The enormous burdens placed on other caregivers to juggle work and family, to care for the children, and to manage their own mental and physical health are, unfortunately, all too common when a father or mother becomes incarcerated. *See United States v. Vailes*, No. 16-CR-297, 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020). Compassionate release is only warranted "where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated." *United States v. John*, No. 15-CR-208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020). Circumstances approaching the truly dire are necessary. *See, e.g.*, *United States v. Seals*, 509 F. Supp. 3d 259, 263 (E.D. Pa. 2020) ("When it can be shown that family members, including minor children, are in dire need of a defendant's caregiving, and other family members are afflicted by incapacitating, life-threatening illnesses, courts have granted release."); *United States v. Kataev*, No. 16-CR-763, 2020 WL 1862685, at *3 (S.D.N.Y. Apr. 14, 2020) (extraordinary and compelling circumstances existed where wife was disabled and therefore unable to provide "adequate care for their ten-year old child with cerebral palsy and periventricular leukomalacia," who "is wheelchair-bound and requires assistance with everyday tasks").

Undoubtedly, the circumstances related to Defendant's son are tragic. Moreover, it is clear that Ms. Cook is struggling to ensure her son's care while also managing the other priorities in her life—among them work, school, and raising two other children. *See* ECF No. 76 at 1. Nevertheless, the burden that Defendant's incarceration has placed on the other caregivers of his

9

children is an unfortunate, all-too-common reality of incarceration, whether said children have special needs or not.  While it may be overwhelming and challenging, there is insufficient evidence that the present situation Ms. Cook faces is approaching the point that she is wholly *incapable* of providing care for her son.  *See Myrick*, 2020 WL 6128943, at *5 ("Courts in this circuit have repeatedly found that [] challenging circumstances do not warrant release when the caretaker is not truly incapacitated.").  Furthermore, there is some indication that, even though Defendant's son was injured less than three months ago, he has already been able to obtain some additional resources and assistance for his needs.  *See* ECF No. 74 at 2 (stating that son was residing at a rehabilitation center in Rochester as of mid-February 2022); ECF No. 77 at 1 (indicating that son receives transportation services).  Thus, it is unclear whether the circumstances Ms. Cook currently faces will be permanent, or whether there may be avenues for assistance that will alleviate some of her burdens.  Given the information before the Court concerning Defendant's family circumstances, the Court cannot conclude that those circumstances justify release when balanced against the § 3553(a) factors.

As the Court discussed at sentencing, Defendant was involved in a drug distribution network that involved trafficking cocaine between New York and Arizona.  *See* ECF No. 46 at 13.  The Court emphasized the seriousness of Defendant's offense: "drugs are killing people every day.  You can pick up the paper and read the number of overdoses that destroy individuals, destroy families, and destroy communities.  So [] obviously it was an extremely serious matter that [Defendant was] involved with."  *Id.*  Defendant received a guidelines increase due to his role as an organizer, leader, manager, or supervisor.  *Id.*  In his plea agreement, Defendant admitted to travelling to Arizona by airplane to coordinate the purchase and transportation of cocaine to Buffalo.  ECF No. 23 at 3.  The Court took into consideration Defendant's family circumstances,

kidney problems, and statements at sentencing, along with his history of drug use. ECF No. 46 at 14. Considering the relevant factors and circumstances, the Court sentenced Defendant to the low-end of the guideline range—one month over the mandatory minimum sentence. *Id.* at 15.

Defendant asks the Court to reduce his release date by more than three years (assuming he is credited with all of his good conduct time), and by nearly five years (assuming he is not). *See* ECF No. 79 at 1. Such a substantial reduction would not be appropriate given the seriousness of Defendant's offense and the role he played in the drug conspiracy. In other words, such a reduction would fail to "substantially satisfy the purpose of his original sentence, as it would fail to 'reflect the seriousness of the offense,' 'promote respect for the law,' or 'provide just punishment for the offense.'" ECF No. 67 at 8 (quoting 18 U.S.C. § 3553(a)(2)(A)). Accordingly, the Court denies Defendant's motion for compassionate release. That being said, the Court's ruling does not prevent Defendant from renewing his request for relief should circumstances change. For example, Defendant believes he may receive additional credit off of his sentence, a change that could bear on whether a sentence reduction would substantially satisfy the purpose of the original sentence. In addition, Defendant is free to seek relief in the future should the conditions pertaining to his son's care and treatment change.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (ECF Nos. 70, 74) is DENIED.

IT IS SO ORDERED.

Dated: April 6, 2022
       Rochester, New York

                                                    _____
                                                    HON. FRANK P. GERACI, JR.
                                                    United States District Judge
                                                    Western District of New York